BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

**Dated: October 17th, 2024**

UNITED STATES BANKRUPT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Blackjewel L.L.C., *et al.*, | Case No. 19-30289 |
| Debtors.[1] | (Jointly Administered) |
| Blackjewel Liquidation Trust by and through David J. Beckman, Trustee | |
| Plaintiff, | Adv. No. 24-03000 |
| v. | |
| Bluegrass Natural Resources, LLC; and Liquidating Trust of INMET Mining, LLC | |
| Defendants. | |

**ORDER DISMISSING CLAIMS AGAINST**
**LIQUIDATING TRUST OF INMET MINING, LLC**

This adversary proceeding is before the Court on the Memorandum of Law filed by Plaintiff Blackjewel Liquidation Trust (the "Blackjewel Trust"), by and through David. J. Beckman,

[1] The former Debtors in these chapter 11 cases and the last four digits of each former Debtor's former taxpayer identification number were as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213).

Trustee, on August 27, 2024. ECF No. 19 (the "Memorandum").[2] Plaintiff filed the Memorandum in response to the Court's Order denying the motion to dismiss filed by Bluegrass Natural Resources, LLC ("Bluegrass") and directing Plaintiff to file a memorandum addressing whether this Court has subject matter jurisdiction over the claims it asserts against the Liquidating Trust of INMET Mining, LLC (the "INMET Trust"). Plaintiff contends that this Court has subject matter jurisdiction over the claims asserted against the INMET Trust, but for the following reasons, the Court finds that it lacks subject matter jurisdiction over those claims.[3] Therefore, those claims will be dismissed without prejudice.

**Factual Background**

Blackjewel, LLC ("Blackjewel") filed a petition for relief in this Court under chapter 11 on July 1, 2019. Case No. 19-30289, ECF No. 1. INMET Mining, LLC ("INMET") acquired certain mining permits, real property interests, and other assets from Blackjewel pursuant to the Court's order on September 17, 2019. Case No. 19-30289, ECF No. 1096 (the "2019 Blackjewel Sale

[2] All "ECF" numbers, unless otherwise specified, refer to the above-captioned adversary proceeding (Adv. No. 24-03000).

[3] "A bankruptcy court has an independent duty to consider subject matter jurisdiction, and lack thereof may 'be raised at any time by the parties or *by the court itself*.'" In re Mitchell, No. 11-08880-8-SWH, 2018 WL 1577710, at *5 (Bankr. E.D.N.C. Mar. 29, 2018) (emphasis in original) (quoting In re Medlin, 269 B.R. 591, 592-93 (Bankr. E.D.N.C. 2001)).

Order"). On March 22, 2021, the Court confirmed a liquidating plan that created the Blackjewel Trust. Case No. 19-30289, ECF Nos. 2499 (plan), 2602-1 (liquidating trust agreement) & 3147 (order confirming plan). David. J. Beckman was appointed as the liquidating trustee of the Blackjewel Trust (the "Blackjewel Liquidating Trustee"). Case No. 19-30289, ECF No. 3147.

INMET filed a petition for relief under chapter 11 in the United States Bankruptcy Court for the Eastern District of Kentucky (the "EDKY Bankruptcy Court") on April 5, 2023. Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 1. INMET conveyed certain assets to Bluegrass Natural Resources, LLC ("Bluegrass") pursuant to the EDKY Bankruptcy Court's order in that case on July 13, 2023. Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 536 (the "2023 INMET Sale Order"). On December 13, 2023, the EDKY Bankruptcy Court confirmed a liquidating plan that created the INMET Trust. Case No. 23-70113 (Bankr. E.D. Ky.), ECF Nos. 728-1 (plan and liquidating trust agreement) & 867 (order confirming plan). Evan Blum was appointed as the liquidating trustee of the INMET Trust (the "INMET Liquidating Trustee"). Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 867.

Bluegrass initiated an adversary proceeding in the EDKY Bankruptcy Court by filing a complaint against the Blackjewel Liquidating Trustee on April 12, 2024. Adv. No. 24-07002 (Bankr. E.D. Ky.) (the "EDKY Action"), ECF No. 1 (the "Bluegrass

Complaint"). In its complaint, Bluegrass alleged that INMET acquired certain real property in Lee County, Virginia (the "Lee County Property") pursuant to this Court's 2019 Blackjewel Sale Order, id. ¶ 20, and sought: (1) a determination that INMET conveyed the Lee County Property to Bluegrass as part of the sale of INMET assets approved by the 2023 INMET Sale Order; and (2) injunctive relief and contempt sanctions against the Blackjewel Liquidating Trustee for taking steps to sell the Lee County Property in violation of that order. Id.

Soon thereafter, the Blackjewel Trust, as successor to the estates of the former debtors and debtors-in-possession in the above-captioned chapter 11 cases ("Debtors") under the terms of the confirmed plan, ECF Nos. 2499 (plan) & 3147 (order confirming plan), initiated this adversary proceeding by filing a complaint in this Court against Bluegrass and the INMET Trust (collectively, the "Defendants") on May 1, 2024. ECF No. 1 (the "Blackjewel Complaint"). In its complaint, the Blackjewel Trust seeks a determination that certain real properties, including the Lee County Property, were retained (the "Disputed Properties") under the 2019 Blackjewel Sale Order, and that neither Debtors nor the Blackjewel Trust sold or transferred ownership interest in the Disputed Properties. Id. Therefore, the Blackjewel Complaint asserts that neither INMET, nor Bluegrass acquired, owned, or owns the Disputed Properties. Id.

Among its allegations, the Blackjewel Complaint seeks damages from Bluegrass and the INMET Trust, as the successor to INMET, for unjust enrichment and trespass to land from alleged unauthorized use of and entry on the Disputed Properties. Id.

On June 12, 2024, the Blackjewel Trust filed in the EDKY Bankruptcy Court a motion to dismiss the EDKY Action for lack of subject matter jurisdiction based on the Barton doctrine, which requires a party who wishes to file suit against a trustee for acts done in the trustee's official capacity to first obtain leave from the appointing court. EDKY Action, ECF No. 42 (citing Barton v. Barbour, 104 U.S. 126, 128 (1881); In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993)). On July 30, 2024, the EDKY Bankruptcy Court entered its memorandum opinion and order determining that the Barton doctrine applied to Bluegrass's claims and granting the Blackjewel Trust's motion to dismiss the EDKY Action. EDKY Action, ECF Nos. 56 & 57.

On June 7, 2024, before the EDKY Bankruptcy Court dismissed the EDKY Action, Bluegrass filed with this Court a motion to dismiss, or in the alternative, to stay this adversary proceeding in favor of the earlier-filed EDKY Action. ECF No. 8. On June 28, 2024, the Blackjewel Trust filed an objection to Bluegrass's motion to dismiss. ECF No. 12. In light of the dismissal of the EDKY Action, on August 6, 2024, this Court entered an order denying Bluegrass's motion to dismiss as moot. ECF No. 15 (the

"Denial Order"). In the Denial Order, the Court directed the Blackjewel Trust to file by August 27, 2024, a memorandum of law addressing (1) why this adversary proceeding should not also be dismissed for lack of subject matter jurisdiction on the same bases as the EDKY Action; and (2) why this Court should not grant leave to Bluegrass to recommence its action in the EDKY Bankruptcy Court against the Blackjewel Liquidating Trustee. Id.

On August 27, 2024, the Blackjewel Trust timely filed its Memorandum in Opposition to the Denial Order. ECF No. 19. The Blackjewel Trust attaches to its Memorandum a joint motion submitted by both the Blackjewel Trust and the INMET Trust, and filed in the EDKY Bankruptcy Court, Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 943 (the "Joint Motion"), in which both trusts stipulate that this Court is the appropriate forum in which to proceed with litigation, pursuant to an amended complaint, against the INMET Liquidating Trustee, as a nominal defendant, and Bluegrass. ECF No. 19-1.[4]

[4] The proposed agreed order granting the Joint Motion provides, in part, that the INMET Trust shall not move to dismiss the amended Blackjewel Complaint, object to this Court's jurisdiction over the adversary proceeding, or object to being a defendant in the adversary proceeding for any reason, including under the Barton doctrine or the INMET Plan. ECF No. 19-1, at 21-22. Bluegrass filed in the EDKY Bankruptcy Court an objection to the Joint Motion, Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 945, arguing that the stipulation is ineffective to cure the jurisdictional deficiency presented by the Barton doctrine. The EDKY Bankruptcy Court held a hearing on the proposed Joint Motion on September 26, 2024. Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 951. At the hearing, the EDKY Bankruptcy Court explained that each court has an independent obligation to review its own jurisdiction, and it was not the role of the EDKY Bankruptcy Court to sanction an agreement of the parties that purports to remove a court's independent determination of a jurisdictional

In the Memorandum,[5] the Blackjewel Trust asserts that this Court should not dismiss this adversary proceeding based on the Barton doctrine because the stipulation between the trusts resolves the Court's Barton doctrine concerns, and, in the alternative, the Barton doctrine is inapplicable in this adversary proceeding under the ultra vires exception. Id. On September 9, 2024, Bluegrass filed a response to the Memorandum, ECF No. 22 (the "Response"), arguing that the stipulation by the trusts does not overcome this Court's lack of subject matter jurisdiction based on the Barton doctrine, and requesting that the Court dismiss this adversary proceeding and grant Bluegrass permission to commence an action similar to the EDKY Action in the EDKY Bankruptcy Court.

For the reasons stated herein, the Barton doctrine applies to the Blackjewel Trust's claims against the INMET Trust, the Joint Motion does not cure the jurisdictional deficiency presented by the doctrine, and the ultra vires exception to the Barton doctrine does not apply. Therefore, the Court will dismiss the Blackjewel Trust's claims against the INMET Trust for lack of subject matter jurisdiction. Because the Court lacks

issue. Id. at 00:35-01:07 & 01:45-01:53. On September 27, 2024, the EDKY Bankruptcy Court entered an order overruling the Joint Motion. Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 953.

[5] In the amended complaint attached to its Memorandum, the Blackjewel Trust seeks damages only against Bluegrass and not the INMET Trust. ECF No. 19-1, at 25-46.

subject matter jurisdiction over the claims, the dismissal of the Blackjewel Trust's claims against the INMET Trust is without prejudice. The Court does not dismiss the Blackjewel Trust's claims against Bluegrass.

**Analysis**

In Barton, the Supreme Court established that before a court may obtain subject matter jurisdiction over a suit filed against a receiver for acts committed in the receiver's official capacity, the plaintiff must obtain leave to sue the receiver from the appointing court. 104 U.S. at 128. This doctrine has been extended to suits against bankruptcy trustees. McDaniel v. Blust, 668 F.3d 153, 157 (4th Cir. 2012) (citing Muratore v. Darr, 375 F.3d 140, 143 (1st Cir. 2004)). Where an action is brought in violation of the Barton doctrine, "the court in which the action was brought must dismiss it for lack of subject matter jurisdiction." In re Byrd, No. 01-25006, 2007 WL 1485441, at *12 (Bankr. D. Md. May 18, 2007) (citing Carter v. Rodgers, 220 F.3d 1249, 1255 (11th Cir. 2000)); see also Fed. R. Civ. P. 12(h)(3) (incorporated by Fed. R. Bankr. P. 7012) (requiring dismissal any time the court determines that it lacks subject matter jurisdiction).

The INMET Liquidating Trustee was appointed by the EDKY Bankruptcy Court. Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 867. The Blackjewel Trust commenced this adversary proceeding

against the INMET Trust without first seeking or obtaining leave from the appointing court. ECF No. 1. In its order dismissing the EDKY Action, the EDKY Bankruptcy Court noted that it had not granted the Blackjewel Trust authority to sue the INMET Trust. EDKY Action, ECF No. 56, at 5.

### A. The trusts cannot stipulate to subject matter jurisdiction to cure a violation of the Barton doctrine.

The Blackjewel Trust contends that the Joint Motion resolves the jurisdictional deficiency presented by the Barton doctrine and identified by this Court. ECF No. 19, at 4-5. According to the Blackjewel Trust, since the trusts have reached a consensual resolution concerning the application of the Barton doctrine, the Court should not dismiss this adversary proceeding notwithstanding the fact that the Blackjewel Trust did not seek leave of the EDKY Bankruptcy Court before bringing suit against the INMET Trust in this Court. ECF No. 19, at 5.

Parties cannot waive the protections of the Barton doctrine or create subject matter jurisdiction by agreement. Instead, the appointing court must approve suits to confer jurisdiction under the Barton doctrine. Newman v. Crane, Heyman, Simon, Welch & Clar, 590 B.R. 457, 462 (N.D. Ill. 2018) (citing In re Sedgwick, 560 B.R. 786, 796 (C.D. Cal. 2016) ("Whether or not to grant leave under Barton to bring suit in another forum is at the discretion of the court. [Movant] has provided no authority to

support his contention that parties can enter into an agreement to waive the requirement of Barton approval, and effectively circumvent this power from the court.”)); cf. In re Providence Hall Assocs. Ltd. P’ship, No. 11-11656-BFK, A.P. No. 18-01013-BFK, 2018 WL 8577031, at *13 (Bankr. E.D. Va. Dec. 21, 2018) (noting that “the purpose of the Barton doctrine is to protect the supervisory powers of the Court.”). The Blackjewel Trust does not cite any authority to support the proposition that parties can limit the applicability of the Barton doctrine via stipulation.

Even if it were possible for the trusts to limit a court’s supervisory powers under the Barton doctrine by stipulation, a post-filing stipulation cannot confer subject matter jurisdiction over the claims originally brought in violation of the Barton doctrine. A court must dismiss a claim brought in violation of the Barton doctrine for lack of subject matter jurisdiction. See Byrd, 2007 WL 1485441, at *12 (citation omitted); see also Fed. R. Civ. P. 12(h)(3) (incorporated by Fed. R. Bankr. P. 7012). Subject matter jurisdiction is determined as of the date a complaint is filed and “no action of the parties can confer subject-matter jurisdiction upon a federal court.” Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); In re Fietz, 852 F.2d 455, 459 n.2 (9th Cir. 1988) (citing Nuclear Eng’g Co. v. Scott, 660 F.2d

241, 248 (7th Cir. 1981)) ("Subject matter jurisdiction should be determined as of the date that the complaint . . . was filed."); see also Gresham Park Cmty. Org. v. Howell, 652 F.2d 1227, 1236 n.25 (5th Cir. 1981); and In re Swan Transportation Co., 596 B.R. 127, 137-38 (Bankr. D. Del. 2018) (dismissing an action brought against the trustee without obtaining authority from the appointing court even where unauthorized suit had been removed to the appointing court after filing).

Accordingly, under Barton, if a party, before obtaining the permission of a trustee's appointing court, commences an action against the trustee in a non-appointing forum, then the non-appointing forum does not have subject matter jurisdiction over the claims against the trustee at the time of filing. No subsequent action by the parties can remedy this lack of jurisdiction, and the non-appointing forum must dismiss the claims against the trustee for lack of subject matter jurisdiction. Thus, the stipulation in the Joint Motion would not allow this Court to overlook the Blackjewel Trust's violation of the Barton doctrine.

**B. The ultra vires exception does not apply to the Blackjewel Trust's claims against the INMET Trust.**

The Blackjewel Trust contends that, even if the Joint Motion does not overcome the Court's lack of subject matter jurisdiction over the claims against the INMET Trust, the Barton doctrine is

inapplicable in this case under the ultra vires exception. ECF No. 19, at 5-7. Several courts have recognized that a trustee who seizes or possesses property that is not property of the estate has acted ultra vires, and, as a result, is not protected by the gatekeeping function contemplated by the Barton doctrine. See, e.g., Teton Millwork Sales v. Schlossberg, 311 F. App'x 145, 148 (10th Cir. 2009); Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir. 1967). To determine whether an act falls under the ultra vires exception, courts consider the nature of the function that the trustee was performing during commission of the actions for which liability is sought. McDaniel, 668 F.3d at 157. The Blackjewel Trust asserts that the Barton doctrine does not apply to its claims against the INMET Trust because the INMET Liquidating Trustee acted outside the scope of his authority in purporting to convey the Disputed Properties to Bluegrass. ECF No. 19, at 7.

Not all unauthorized actions are subject to the ultra vires exception to the Barton doctrine. "[A] suit premised upon allegations that a trustee engaged in conduct that is intentional, wrongful, or even illegal does not remove it from the scope of the trustee's duties and authority so as to defeat the applicability of the Barton doctrine when the conduct is connected to the trustee's execution of his official duties." In re Cutright, No. 08-70160-SCS, 2012 Bankr. LEXIS 2419, at *21

(Bankr. E.D. Va. May 30, 2012); see, e.g., Satterfield v. Malloy, No. 10-CV-03-TCK-FHM, 2011 U.S. Dist. LEXIS 64516, at *13 (N.D. Okla. June 8, 2011) (slip copy) (declining to find that unlawful or improper acts necessarily exceed the scope of a trustee's authority). The Fourth Circuit has agreed that alleged wrongful conduct does not necessarily render the Barton doctrine inapplicable. See McDaniel, 668 F.3d at 157 (reasoning that the alleged wrongful conduct was done "in the context of attempting to prove the adversary action").

The INMET Trust's putative conveyance of the Disputed Properties to Bluegrass via quitclaim deed does not constitute a sufficient physical possession or seizure of the Disputed Properties by the INMET Liquidating Trustee to make it ultra vires for purposes of the Barton doctrine.[6] The Blackjewel Trust argues that the Disputed Properties could not have been sold by INMET to Bluegrass unless "INMET unlawfully seized the [Blackjewel] Trust's Disputed Properties." ECF No. 19, at 7. However, the mere act of purporting to sell the Disputed

[6] According to Bluegrass's Response, following the 2019 Blackjewel Sale Order, INMET operated a coal processing and transporting business on the Lee County Property without objection from the Blackjewel Trust. ECF No. 22, at 3. The Blackjewel Trust does not contend that this possession of the Lee County Property by INMET was either wrongful or unauthorized. See ECF No. 19. Moreover, this temporary possession by INMET is not the subject of the current claims. Rather, it is the challenged sale of the property by the INMET Trust to Bluegrass.

Properties cannot properly be considered a "seizure."[7]

Courts have generally found the ultra vires exception to apply only where the trustee "actually seizes or possesses property that is not property of the estate." Cutright, 2012 Bankr. LEXIS 2419, at *23 (holding that the doctrine did not apply where the trustee's "overstatement of the extent of the estate's interest in the Property in the Purchase Agreement does not amount to actual seizure, possession, or control of the property of a third party"). See also Teton Millwork Sales, 311 F. App'x at 147-48 (finding that a court-appointed receiver in a divorce proceeding "wrongfully seized" assets of a third party where the receiver, through false representation, took possession of a corporation's entire corporate holdings, including its money and mail, when he knew that the husband in the proceeding was only a 25% shareholder in the corporation);[8] Leonard, 383 F.2d at 560 (finding that a receiver-trustee broke into and "seiz[ed] possession of the real property" of another

---

[7] Although intimating that a seizure may have occurred prior to the sale, the Blackjewel Trust does not allege any non-consensual action by the INMET Trust, besides the sale of the Disputed Properties themselves, that could constitute a seizure. See ECF No. 19, at 7.

[8] In finding that the receiver acted outside the scope of his authority, the majority in Teton Millwork distinguished cases cited by the dissent because none of them involved an outside party who claimed that their assets had wrongfully been seized. Teton Millwork Sales, 311 F. App'x at *2. Here, the Blackjewel Trust necessarily concedes that INMET's possession of the Lee County Property was neither wrongful nor unauthorized. See infra n.6. The Blackjewel Trust challenges only the purported sale of the property by the INMET Trust to Bluegrass, an action that was authorized by the EDKY Bankruptcy Court. See supra pp. 17-18.

where he took physical possession and changed the locks of a building which he later discovered had been transferred by the debtor to a third party prepetition).

Although the court in Cutright distinguished those cases in which the ultra vires exception applied because the trustee did not actually consummate the sale in its case, 2012 Bankr. LEXIS 2419, at *23, that distinction is not determinative. Other cases demonstrate that a trustee's purported conveyance of property in which the bankruptcy estate has no interest, without more, does not necessarily amount to a "seizure" of the property for purposes of application of the ultra vires exception. See In re Cruz, 562 B.R. 812, 817 (Bankr. M.D. Fla. 2016) (quoting Leonard, 383 F.2d at 560) (holding that a chapter 7 trustee's execution of a trustee's deed purporting to convey real property owned by a third-party did not amount to a "seizure of possession" of the property). In Cruz, the court noted that the trustee's sale of the property via trustee's deed transferred only whatever right, title, and interest the bankruptcy estate had in the property. Id. at 817-18. The Court found that because the bankruptcy estate had no interest in the property the trustee purported to convey, the trustee's sale of the property conveyed nothing. Id. Therefore, this purported conveyance did not amount to a seizure of the property, and the ultra vires exception to the Barton doctrine did not apply. Id. at 817. In any event, in this case,

the ownership of the property is itself the dispute.

In similar circumstances, the court in In re Preferred Ready-Mix, LLC, held that a receiver's actions were not ultra vires where the court had ordered the receiver to seize non-estate physical assets. 660 B.R. 214, 216 (S.D. Tex. 2024). The court reasoned:

> [T]he prime example of an ultra vires act consists of a receiver or trustee "wrongfully or mistakenly 'tak[ing] possession of property belonging to another.'" In [r]e Foster, 2023 U.S. App. LEXIS 52, 2023 WL 20872, at *5 (quoting Barton, 104 U.S. at 134). However, the reason these acts are considered ultra vires is because taking the wrong person's property would, in most cases, clearly run afoul of the receiver's authority as granted by the appointing court and thus be "outside the scope of [the person's official] duties." Id. This case is different. Here, in the appointing court's order, [the receiver] was expressly ordered to "immediately seize the physical assets of Preferred Ready-Mix, LLC[.]" . . . (emphasis added). Thus, in seizing the physical assets of Ready-Mix, [the receiver] did exactly as instructed, acting squarely within the scope of his official duties. Whether or not the appointing court made the right decision by directing [the receiver] to seize Ready-Mix's assets . . . has no bearing on whether [the receiver] was acting within the scope of his official duties.

Id. at 222.

Like the appointing court in Preferred Ready-Mix, LLC, the EDKY Bankruptcy Court authorized the INMET Liquidating Trustee to convey multiple properties, including property related to the operations on the Disputed Properties, to Bluegrass. Moreover, through the Notice of Asset Sales and Settlement filed by INMET on July 28, 2023, Case No. 23-70113 (Bankr. E.D. Ky.), ECF No.

580, INMET purported to convey at least a portion of the Disputed Properties to Bluegrass pursuant to the 2023 INMET Sale Order and the Amended and Restated Stalking Horse Asset Purchase Agreement. Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 617 (the "Stalking Horse Agreement"); and ECF No. 617-1, at 164-75. The 2023 INMET Sale Order provided that the properties and assets to be sold pursuant to the Stalking Horse Agreement constituted property of the INMET bankruptcy estate. Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 536, at 2 & 6. Further, the 2023 INMET Sale Order authorized INMET to consummate the sale of its assets pursuant to the terms of the Stalking Horse Agreement. Id. at 20. The Stalking Horse Agreement purported to convey certain real property, including the Disputed Properties, to Bluegrass via quitclaim deed. Case No. 23-70113 (Bankr. E.D. Ky.), ECF No. 617-1, at 164-75. Therefore, the INMET Trust, in purporting to convey at least a portion of the Disputed Properties to Bluegrass, acted within the scope of its duties as contemplated by the EDKY Bankruptcy Court.[9] Notwithstanding the

[9] At the hearing on the Blackjewel Trust's motion to dismiss the EDKY Action, the EDKY Bankruptcy Court expressed frustration with the Blackjewel Trust's failure to object to INMET's sale of the Disputed Properties to Bluegrass despite actively participating in the sale process. EDKY Action, ECF No. 50, at 18:40-19:05. Further, in its prior order denying the Blackjewel Trust's motion to stay the EDKY Action, the EDKY Bankruptcy Court noted that "[t]he [Blackjewel Trust] glosses over its aggressive participation in the sale process in the INMET bankruptcy case." EDKY Action, ECF No. 38, at 3. The Bluegrass Complaint states that the EDKY Bankruptcy Court approved the 2023 INMET Sale Order "[w]ithout any objection from Blackjewel, which had actively participated in INMET's bankruptcy case from its inception and objected to various other

Blackjewel Trust's assertion that the Disputed Properties were never property of the INMET estate, the INMET Liquidating Trustee's act of purporting to convey this property to Bluegrass was connected to his duty to administer other related assets of the INMET estate and was done under the supervision of the EDKY Bankruptcy Court with the Blackjewel Trust's participation in the process. These circumstances, like the circumstances in Preferred Ready-Mix, LLC, do not present the sort of conduct that would remove the sale of the Disputed Properties from the scope of the Barton doctrine. Therefore, the INMET Liquidating Trustee did not act ultra vires for purposes of the Barton doctrine in conveying the Disputed Properties to Bluegrass.

For these reasons, the Blackjewel Trust was required to obtain leave of the EDKY Bankruptcy Court before bringing suit against the INMET Trust in this Court. The Blackjewel Trust did not obtain such leave, and this Court lacks subject matter jurisdiction over these claims.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED that the claims of the Blackjewel Trust against the INMET Trust are dismissed without prejudice for lack of subject matter

---

aspects of INMET's then-proposed sale to Bluegrass . . . ." EDKY Action, ECF No. 1, at 2. Additionally, Bluegrass's response to the Blackjewel Trust's motion to stay the EDKY Action, asserts that the Blackjewel Trust had a reasonable opportunity to object or be heard regarding the 2023 INMET Sale Order but nevertheless launched a collateral attack on the 2023 INMET Sale Order nine months after it was entered. EDKY Action, ECF No. 24, at 2.

jurisdiction.

[END OF DOCUMENT]

Parties to be Served
24-03000

All parties to this adversary proceeding.